UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN S. KELLEY,

      Petitioner,

v.                          CASE NO: 8:03-CV-2071-T-30EAJ

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.
_____/

# ORDER

Petitioner, an inmate of the Florida penal system proceeding pro se, initiated this action by timely filing a Petition for Writ of Habeas Corpus (Dkt. #1) on October 3, 2003, pursuant to 28 U.S.C. §2254. After considering the Petition, the Response (Dkt. #16) thereto, and the Reply (Dkt. #19), the Court determines that the Petition must be denied.

## BACKGROUND

Respondent appropriately describes the procedural history of the matter now before the Court and it is reiterated here.

On October 1, 1996, Brian Kelley was charged with aggravated battery on Craig Neilson occurring August 26, 1996. Represented by Dyril Flanagan, court-appointed counsel, Kelley entered a plea of nolo contendere on February 25, 1997. Subsequently, represented by privately retained counsel, Collin Vause, Kelley sought and gained plea withdrawal.

Kelley proceeded to jury trial over which the Honorable Nelly Khouzam, state circuit judge presided July 2-3, 1997, and was found guilty as charged.  On July 25, 1997, Kelley was adjudicated guilty in accordance with the verdict, designated a habitual felony offender, and sentenced to 12 years prison.

Kelley appealed, arguing he was denied effective assistance of trial counsel.  He also argued the state trial court erred in denying his motion for judgment of acquittal.  On December 23, 1998, the state district court per curiam affirmed the state judgment without written opinion in case no. 97-4194.  Kelley v. State, 728 So.2d 220 (Fla. 2d DCA 1998)[table].  The mandate issued January 19, 1999.

Kelley filed a timely pro se motion for post-conviction relief dated December 14, 1999, under Florida Rule of Criminal Procedure 3.850, raising nineteen claims.  In a non-final order filed July 19, 2001, the Honorable Richard Luce, state circuit judge, summarily denied relief, with the exception of ground two, to which the state was directed to respond. The order states, in relevant part, as follows:

### Ground One

Defendant alleges that counsel was ineffective by coercing Defendant not to testify in his trial on the morning of the trial.  Additionally, Defendant contends that his decision not to testify was influenced by his drug and alcohol use.  According to Defendant, self-defense was the trial strategy  and he was the key witness.  However, at the beginning of the trial, counsel warned him that the State would "eat him up" with his prior criminal record and highly advised him against testifying.  To appease counsel, Defendant agreed not to testify.

However, upon careful review of the record, the Court advised Defendant of his right to testify and verified that he waived this right freely

and voluntarily. [*See Exhibit 3; Excerpts of Trial Transcript, pgs. 202-205.*] The Court specifically inquires into Defendant's knowledge regarding the use of prior convictions during a cross-examination. [*See Exhibit 3: pgs. 203-04*] *See Tyler v. State,* 26 Fla. L. Weekly D925 (Fla.2d DCA April 4, 2001). Additionally, the Court does not note that Defendant appears to be under the influence of drugs and or alcohol; instead, the Court indicates that Defendant actively participated in the trial and assisted defense counsel. [*Exhibit 3.]* As such, this claim is without merit and the claim is denied.

## Ground Two

Defendant contends that counsel failed to properly investigate, subpoena or depose witnesses to support his case. Specifically, Defendant argues that he advised counsel to investigate Shawn McCloud, a neighbor, but counsel failed to interview or depose Mr. McCloud. Additionally, Defendant argues that counsel failed to depose Royce Vick or "Debbie." To satisfy this claim, Defendant must provide the identity of the witness, the substance of the witness's testimony and allege how the omission of the witness's testimony prejudiced the outcome of the trial. *See Tyler v. State,* 26 Fla. L. Weekly D925 (Fla. 2d DCA April 4, 2001); *Kilgore v. State,* 631 So. 2d 334 (Fla. 1st DCA). The record does not reveal that a deposition of McCloud or Vick was conducted. However, Vick was a witness at trial and the Court finds that counsel conducted an adequate cross-examination of Vick. [*See Exhibit 4; Excerpt of Trial Transcript pgs. 68-88.]* Therefore, it appears that counsel did properly investigate the substance of Vick's testimony.

Also, Defendant does not present a facially sufficient claim for witness "Debbie." As such, this claim, with regard to Vick and "Debbie" is denied.

However, Defendant presents a facially sufficient claim with regard to Shawn McCloud. Defendant must allege how the omission of this test prejudiced his trial. Defendant alleges that McCloud would have testified that two men repeatedly knocked, loudly, on Defendant's door, and the side of his trailer, and would not leave his property despite his requests for them to retreat. In essence, McCloud's testimony would be that Defendant was not the initial aggressor and was acting in self-defense. If these allegations are correct, it is reasonable that the omission of this testimony would prejudice Defendant's trial. Additionally, McCloud's name does not appear in the police report. Therefore, the State is instructed to address this issue pertaining to Shawn McCloud.

## Ground Three

Defendant alleges that counsel was ineffective by failing to effectively impeach Royce Vick and Craig Neilson with their inconsistent statements. Upon review of the record, the Court finds that Vick's testimony was properly impeached and the witness even changed his testimony several times during testimony. [*See Exhibit 4:Excerpts of Trial Transcripts, pgs. 68-88.*] These inconsistent statements could cast reasonable doubt onto Vick's recollection of events and it was up to the jury to weigh the evidence accordingly.

Defendant also contends that counsel failed to properly impeach Neilson with inconsistent statements, specifically his statements to the police and whether Defendant exited the trailer with a pipe in hand or picked up the pipe off the ground. After reviewing Neilson's testimony, the Court finds that Neilson was properly impeached. [*See Exhibit 5: Excerpts of Trial Transcripts, pgs. 111-124*]. In fact, Neilson was confronted with the inconsistency between the statements he gave police and his court testimony. [*See Exhibit 5: pgs. 121-22.*]

Also, it is a harmless error whether Defendant exited the trailer swinging the pipe in his hand or whether he picked up the pipe from the ground. Defendant admits that Ms. Bennett, a witness, stated the pipe was outside and that counsel further reiterated this fact during closing. However, Defendant contends that Neilson testified that Defendant exited the trailer with the pipe and that counsel failed to impeach on that matter. The Court finds this is a harmless error and Defendant has not shown that he suffered prejudice as a result of this alleged error. Therefore, this claim is without merit and is denied.

## Ground Four

Next, Defendant contends that counsel failed to investigate Royce Vick's bias toward Defendant. Basically, Defendant claims that Vick disliked the fact that Defendant lived with Vick's daughter and this presented a motive to lie. However, during the trial, counsel did inquire into Vick's bias toward Defendant, specifically the fact that Vick hated Defendant and had allegedly paid people to beat up Defendant. [*See Exhibit 5: pgs. 122-124*] Also, the Court notes that Defendant admits in his motion, that the State objected to this line of questioning and, following a bench conference, defense counsel was allowed to continue the questioning in a limited manner. The claim is denied.

## Ground Five

Defendant alleges that several witnesses, specifically Craig Neilson and Royce Vick, committed perjury and further claims that the State, the Court and defense counsel were aware of this occurrence.  A claim of perjured testimony is properly raised in Rule 3.850, motion if Defendant can prove  that the alleged false testimony could have reasonably affected the jury, and thus, the outcome of the case.  *See Giglio v. U.S.,* 405 U.S. 150, 92 S. Ct. 763 (1972); *Fannin v. State*, 751 So. 2d 158 (Fla.2 DCA 2000).

First, Defendant should note there is a vast difference between perjury and inconsistent statements.  Perjury is "a person deliberately make false or misleading statements while under oath."  Black's Law Dictionary 478 (6th Pocket Ed. 1996).  While inconsistent statements are " a witnesses' earlier statement that conflicts with the witnesses' testimony at trial."  Black's Law Dictionary 499 (6th Pocket Ed. 1996).

Upon review of the record, overall the witnesses have maintained the same version of the facts.  It is true, that during trial, the witnesses present some inconsistent statements, which is often the case.  However, counsel was able to impeach the witnesses with these statements and cast doubt onto the credibility of their testimony. [*See Exhibits 4 and 5.]*  This is not a case where the version of the facts given to police, or other investigating agencies before trial, is vastly different from trial testimony.   This does not rise to the level of perjury and Defendant has not proved that the perjury existed.  Moreover, Defendant does not adequately allege how the State, the Court or defense counsel knew of the perjury and permitted perjury to occur.  As such, this claim is denied.

## Ground Six

Defendant alleges that counsel was ineffective for failing [to] object to the deletion of the jury instruction relating to victim reputation.  Defendant is correct in noting that the victim reputation jury instruction was not given to the jury for consideration.  [*See Exhibit 6: Excerpts of Trial Transcript, p. 212.]* In fact, no victim reputation was presented during trial.  Defendant should be aware that victim reputation is evidence that would prove Defendant's character or, in other words, present what others thought about Defendant. *See* Black's Law Dictionary 237 (6th Pocket Ed. 1996).  Upon review of the

record, it is evident that no such evidence was presented and, as such, counsel was proper in permitting that jury instruction to be deleted. This claim is denied.

### Ground Seven

Then, Defendant alleges that counsel was ineffective by initially choosing the jury instruction on justifiable use of non-deadly force versus justifiable use of deadly force. It is correct that defense counsel was initially indecisive regarding which instruction he desired, but eventually chose justifiable use of non-deadly force. [*See Exhibit 7: Excerpts of Trial Transcript, pgs. 214-16.*] However, once the closing arguments were finished, defense counsel requested the jury instruction of justifiable use of deadly force be read to the jury. [*See Exhibit 8: Excerpts of Trial Transcript, pgs. 254-63.*] To provide fairness to each party, the Court permitted each side ten minutes to re-address the jury regarding the issuance of this instruction. The Court finds that the alleged error, if any, was harmless and Defendant was not prejudiced by such action. This claim is denied.

### Ground Eight

Defendant alleges that defense counsel was ineffective by failing to object to prosecutor's improper comments during closing arguments. Specifically, Defendant claims that the State made statements relating to Defendant's right to remain silent. For example, Defendant alleges the State repeatedly stated that the jury only heard "from two witnesses" and "there is nothing from the witness stand, other than the testimony of Mr. Neilson and Mr. Vick." [*See Exhibit 9:Excerpts of Trial Transcript, pgs. 220-22.*] Also, the Court notes that Defendant now raises a total of five comments to illustrate his point; however, Defendant alleges that at least two of these statements were previously addressed in his direct appeal.

First, the Court must examine these statements in the context of the closing argument. *See Garcia v. State,* 644 So. 2d 59, 62 (Fla. 1994). Also, the Court must consider whether these statements merit a new trial specifically evaluating whether the remarks have deprived Defendant of a fair trial, materially contributed to the conviction, or are so inflammatory that the statements influenced the jury to reach a more severe verdict than it would have otherwise. *See Brown v. State,* 754 So.2d 188 (Fla. 5th DCA 2000). Here, the Court finds that the statements to do not present such egregious conduct as to deny Defendant a fair trial, materially contribute to the

conviction or inflame the jury to reach a more severe verdict. Therefore, this claim is without merit and is denied.

### Ground Nine

Defendant contends that his fundamental rights were violated when his counsel was not permitted to complete an objection during closing arguments. *[See Exhibit 0: Excerpt of Trial Transcript, pgs. 245-49.]* fundamental error is an error that affects the foundation of the case's merits. See Farrow v. State, 573 So.2d 161, 162 (Fla. 4th DCA 1990). Defendant should note that just because counsel was not permitted to finish his objection does not mean that objection is not preserved. In fact, when viewed in context, it is clear that counsel was reiterating an objection to the State's usage of a jury instruction that, previously, the Court had considered during a bench conference. [*See Exhibit 10.]* The Court finds this ground does not affect the case's merits and does not constitute fundamental error. This claim is denied.

### Ground Ten

Next, Defendant alleges that counsel was ineffective in filing his motion in limine that contained inadequate case law. Although Defendant's claim is unclear, the Court finds that Defendant does not adequately allege that he suffered prejudice as a result of this alleged error. As such, this claim is denied.

### Ground Eleven

Defendant alleges that prosecutorial misconduct existed when the State dropped the metal pipe, admitted into evidence, on the floor during closing arguments. Furthermore, Defendant contends that counsel was ineffective for failing to object to this action. Upon review of the record, there is no evidence that the pipe was dropped. But, for argument's sake, it is not mandatory that counsel object to the dropping of the pipe. There is no evidence that the State dropped the pipe on purpose or that it denied Defendant a fair trial. In fact, the Court opines that such an objection would be ridiculous.

Also, Defendant argues that counsel should have objected to the State's closing argument regarding the reason why Mr. Neilson and Mr. Vick visited Defendant's house at 5:30 .am. Defendant contends that the State improperly stated they stopped by to retrieve a bicycle, when evidence was presented that the bicycle was already returned to the rightful owner. Defendant should

know that during closing arguments each side gets to present their arguments and their version of the evidence that was presented. [*See Exhibit 11: Excerpts of Trial Transcript, p. 219.*] There was testimonial evidence that Mr. Neilson and Mr. Vick traveled to Defendant's house to get the bike; whereas, testimony also existed that the bike was already returned to them. It is the jury's duty to weigh the evidence and the credibility of the witness to reach a verdict. It would be improper, and very disruptive, for counsel to continuously object to the other party's characterization of the facts as they argue their case. Rather, the proper behavior, is to object only to those statements without merit (i.e., utilizing facts not in evidence) and to present their case during their closing argument. The Court finds that defense did a sound closing argument and did alert the jury to the inconsistencies in the evidence, such as the reason for visiting Defendant's house, how long they knocked on Defendant's house, and the overall events that transpired. [*See Exhibit 12: Excerpts of Closing Argument, pgs.223-40.*] This claim is without merit and is denied.

## Ground Twelve

Defendant alleges that counsel was ineffective for failing to stop court proceedings, specifically the sentencing hearing, to investigate his bi-polar mental condition. It is true that during the sentencing hearing, and not at trial, Defendant mentions he may have bipolar condition that makes him more susceptible to alcohol use. [*See Exhibit 13:Excerpt of Sentencing Transcript, p.7]* Also, counsel does argue that Defendant's alcohol use should be a mitigating factor in the sentencing. [*See Exhibit 14:Excerpt of Sentencing Transcript, pgs.9-10.*] It is not mandatory that the proceeding stop to investigate this matter. Instead, counsel acted properly in arguing the alcohol use as a mitigating factor for the Court to evaluate before imposing the sentence. This claim is without merit and is denied.

## Ground Thirteen

Defendant contends that counsel erred by not objecting to the State's incorrect statement of the law during closing arguments. Specifically, Defendant alleges that the State incorrectly stated that Defendant "used a deadly weapon and he used it in a manner likely to cause death or great bodily harm." This is not an incorrect statement of the law, but rather a proper characterization of aggravated battery law. In fact, the wording contained in the jury instruction is almost verbatim to the State's usage. [*See Exhibit 15: Jury Instruction.]* Again, this is just another instance of the State presenting its case to the jury. This claim is without merit and is denied.

### Ground Fourteen

Next, Defendant cites that counsel violated Florida Bar Rules, relating to juror contact, to further demonstrate that counsel was ineffective. Defendant admits that this claim was addressed at an unrecorded bench trial, during a motion for a new trial and the Court found that defense counsel did not intentionally violate the rules.  [*See Exhibit 16; Excerpt of Motion for New Trial Transcript.*]  Defendant does not show that he suffered prejudice as a result of these actions.  Also, if Defendant is disputing the denial of the motion for a new trial, he should be mindful that is a direct appeal issue and is not proper in a Rule 3.850 motion.  This ground is without merit and is denied.

### Ground Fifteen

Defendant alleges that he was denied a fair trial because a juror was asleep during parts of the trial. In fact, this was the basis for Defendant's motion for a new trial that the Court denied.  Regardless,  during the hearing on this matter, it is stated that the sleeping juror claim is meritless and defense counsel was "authorized to waive that issue by my client." [*See Exhibit* 16: *Excerpts from Motion for New Trial.]*  As such, this claim is denied.

### Ground Sixteen

Defendant contends that counsel was ineffective for failing to investigate and present to the jury evidence of Mr. Neilson's drug and alcohol use.  Defendant states that Mr. Neilson uses a drug titled " Soma" to control his behavior and this would demonstrate his psychotic behavior.

Upon review of the record, on several occasions, testimony revealed that Mr. Neilson was drinking for a long period of time on the date of the offenses.  [*See Exhibit 17: Excerpts of Trial Transcript, pgs, 94-5,99, 126.]* Additionally, counsel did depose Mr. Neilson and inquired into his drinking habits.  [*See Exhibit 18: Excerpts of Deposition, pgs. 5-6.]*  There is no evidence in the deposition that Mr. Neilson was questioned regarding his drug use.  However, it is clear that the jury knew that Mr. Neilson was drinking on the offense date and would have adequately weighed such evidence.  The Court finds that even if Mr. Neilson's drug use was brought to the jury's attention it would not have affected the outcome of the trial.  Therefore, the Court finds that this matter did not prejudice Defendant and this claim is denied.

### Ground Seventeen

Finally, Defendant alleges that the cumulative errors by counsel resulted in a prejudiced trial. However, Defendant fails to allege any specific facts to support this allegation and just presents conclusory statements. As such, this claim is without merit and is denied.

Accordingly, it is

**ORDERED AND ADJUDGED** that the Motion for Post-Conviction Relief is hereby **DENIED IN PART.**

**IT IS FURTHER ORDERED AND ADJUDGED** that the Office of State Attorney of the Sixth Judicial Circuit shall have thirty(30) days from the date of this Order to address the claims raised in Ground Two.

**DEFENDANT IS HEREBY NOTIFIED** that this is NOT a final order and he should not file an appeal until a final order is issued.

. . . .

Following submission of an exhaustive response by the state, the post-conviction court in an order filed July 27, 2001, adopted the response and denied relief. In denying ground two, the state court held, in relevant part, as follows:

Defendant claims, in ground two, that if counsel had properly investigated potential witness Shawn McCloud, counsel would have discovered that Defendant was not the initial aggressor and he was acting in self-defense. Defendant concedes that McCloud only witnessed the first part of the offense and did not witness Defendant strike the victim. The incident began with the victim, along with another man, knocking and banging on Defendant's trailer, at 5:30a.m., to wake him up and retrieve a bicycle and money. In response, Defendant yelled at the men not to wake him up. Eventually, Defendant emerged from the trailer and , at some point, armed himself with a pipe and chased the men away from his trailer. These are the events that McCloud would have witnessed and he did not witness the events that occurred once the men ran around the trailer or the actual striking of the victim with the pipe.

> In weighing this testimony against the other evidence presented at trial, the Court finds that McCloud's testimony would not support Defendant's self-defense theory to reasonably produce a different trial outcome.
>
> . . . .

Kelley appealed the summary denial.  On January 18, 2002, the state district court reversed the summary denial only with respect to Kelley's claim asserting his trial counsel rendered ineffective assistance as to his sleeping juror issue.  The order was otherwise affirmed.  More particularly, the state court held, in relevant part, as follows:

> Brian S. Kelley timely appeals the summary denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. In the motion, Kelley raises nineteen issues. We affirm eighteen of the issues without comment.  We reverse and remand on the remaining issue.
>
> Kelley claims that one of the jurors slept through substantial portions of the State's case and had to be awakened by a bailiff.  Kelley identifies several people who spoke to defense counsel about the sleeping juror during the trial. Defense counsel used this issue to move for a new trial, but at the hearing on the motion for new trial, defense counsel told the trial court that Kelley had authorized him to waive the issue.  Kelley denies this and further alleges that his defense attorney told him he would obtain affidavits from witnesses and the bailiff. Nothing in the record indicates that he contacted the bailiff. Kelley alleges that defense counsel failed to investigate the motion fully, failed to file the affidavits, and then waived the issue without Kelley's permission, telling the trial court that his motion could not be substantiated.
>
> Kelley has made a facially sufficient claim which the trial court failed to refute conclusively. See Moran v. State, 750 So.2d 132 (Fla. 2d DCA 2000) (holding that defendant made a facially sufficient claim by alleging that trial counsel knew of potential witnesses, but failed to investigate and produce them at a motion for new trial based on juror misconduct). We reverse and remand on this claim. In spite of the trial court's recognized diligence observing the jury during the trial, the bailiff's recollections would have clarified this matter. The trial court shall either provide attachments from the record that conclusively refute Kelley's claim or conduct an evidentiary hearing on the issue.

Affirmed in part, reversed in part, and remanded.

Id., at 88-89.

On remand, an evidentiary hearing was held on ground two of the rule 3.850 motion before the Honorable Richard Luce, state circuit judge, on May 31, 2002.  At the conclusion of the hearing, the post-conviction judge made oral findings of fact and conclusions of law adverse to Kelley and denied relief.  A written order followed.

Kelley appealed the denial entered after an evidentiary hearing.  Following briefing, on June 27, 2003, the state district court affirmed per curiam without written decision in case no. 2D03-2735.  Kelley v. State, 853 So.2d 419 (Fla. 2d DCA 2003)[table].  The mandate issued September 3, 2003.

## THE PETITION TO THIS COURT

In this Court, Kelley brings his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 asserting eleven (11) different claims, all but one of which are based on ineffective assistance of counsel.  The claims are:

>1.	His trial attorney was ineffective by coercing him into not testifying by using threatening tactics.

>2.	His trial attorney was ineffective for failing to investigate, depose, and subpoena an eye witness to part of the incident who would have corroborated Defendant's theory of defense (i.e., self-defense).

>3.	His trial attorney was ineffective by not producing perjured sworn statements of victims stating why they came to Kelley's home.

>4.	His trial attorney was ineffective for "forgetting defense," i.e., showing why a witness would be biased towards Kelley because Kelley lived with his daughter against family wishes.

5. His trial attorney was ineffective for failing to object to the deletion of a jury instruction on victim reputation evidence.

6. Trial attorney was ineffective for not providing an adequate defense because "he couldn't even choose a correct jury instruction."

7. The trial court erred by forbidding Kelley's trial attorney from making an objection "leaving record unperfected for appellate review."

8. His trial attorney was ineffective for failing to object to prosecutor's erroneous closing statement on why victims went to Defendant's residence after testimony revealed victims' reasons were untrue."

9. Both trial and appellate counsel were ineffective "by not producing witnesses and court camera footage video showing sleeping juror, evidencing fact that Defendant was convicted by five member jury against constitutional protections."

10. Trial attorney was ineffective by allowing prosecutor "to continuously comment on Defendant's right to remain silent."

11. The cumulative errors made by his trial attorney, the prosecutor, and the trial court judge caused the Defendant to be convicted.

## **STANDARD OF REVIEW**

Kelley brings this Petition, as he must, pursuant to 28 U.S.C. §2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), effective April 24, 1996. Section 2254 establishes a highly deferential standard for reviewing state court judgments. When a federal court is asked to review a criminal conviction from state court, it may not grant habeas relief with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim resulted in a decision that: (1) was contrary to clearly established federal law, as determined by the Supreme Court of the United States, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding.  28 U.S.C. §2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 386 (2000).

Under the first standard, federal habeas relief is only available if the state court's application of clearly established federal law was "objectively unreasonable."  <u>Parker v. Head</u>, 244 F.3d 831, 835 (11th Cir. 2001).  A federal court is required to presume that state court findings of fact are correct unless the petitioner is able to rebut that presumption by clear and convincing evidence.  28 U.S.C. §2254(e)(1).  When a petitioner claims his trial attorney was ineffective, he must show that counsel's performance was both deficient and that the deficient performance prejudiced the defense.  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Deficient performance is performance which is objectively unreasonable under prevailing professional norms.  <u>Strickland</u> at 688.  Prejudice results when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  <u>Strickland</u> at 694.  To prevail, a habeas petitioner must satisfy both prongs of the <u>Strickland</u> test.  The failure to meet either prong is fatal to the claim.  <u>Oats v. Singletary</u>, 141 F.3d 1018 (11th Cir. 1998).

## DISCUSSION

The Court will address each of Petitioner's eleven (11) claims in order.

## Claim One

His trial attorney was ineffective by coercing him into not testifying by using threatening tactics.

In support of claim one, Kelley argues that he and his lawyer agreed that Kelley must testify because self-defense was the only theory of defense available.  Then, right before trial,

counsel told Kelley not to testify because the state would bring up his past criminal record and "eat (him) up."  Kelley says he was "led to believe" that the state would bring up every fact in his past charges and not just the number of offenses with which he had been convicted.  Kelley claims that this information was erroneous and that therefore his decision not to testify was not knowingly and willingly made.  Further, he contends that his failure to testify resulted in an abandonment of his only viable defense.

It appears that, in making this claim, Kelley has added a new argument that was not made before the state court in his Rule 3.850 motion.  That is, he seems to now assert that it was his fear that the factual details of his prior criminal history would be revealed on cross-examination, rather than his fear that the jury would learn of his convictions of prior felonies that caused him to decide not to testify.  If Kelley is seeking to now make a new argument, he is precluded from doing so by the procedural default doctrine because this claim was not exhausted in state court.  Footman v. Singletary, 978 F.2d 1207 (11th Cir. 1992).  In his state court 3.850 motion, Kelley only alleged his attorney told him the prosecutor would bring up past incidents of criminal convictions and "eat me up."  He did not allege his attorney told him the prosecutor could bring up details of the convictions.  Even if not procedurally barred, this claim, like his original claim on this point, fails because it does not meet either the deficiency or the prejudice prong of the Strickland standard.  Strickland, 466 U.S. 558 (1984).

Far from being deficient, the attorney's advice to Kelley to not testify appears most reasonable.  Kelley had a significant criminal history as evidenced by him being adjudicated

as an habitual offender by the state court.  A defense attorney's sense of the jury's reaction to testimony or evidence is a sound basis on which to make strategic decisions.  <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1040 (11th Cir. 1994).  Advice based on trial strategy is not deficient performance.  <u>See</u> <u>Strickland</u>, 466 U.S. 558.

Further, in denying this claim in Kelley's 3.850 motion, the state court found that Kelley had also been advised of his right to testify by the trial court.  That finding of fact was based on the trial court record in which the following colloquy takes place:

BRIAN KELLEY<br>WAS CALLED AS A WITNESS AND AFTER BEING DULY SWORN ON<br>OATH WAS EXAMINED AND TESTIFIED AS FOLLOWS:

THE COURT:        Very good.  How old are you, sir?

THE DEFENDANT:        Forty-two.

THE COURT:        How far did you go to school in terms of your education?

THE DEFENDANT:        Twelfth grade.

THE COURT:        Now - - I'm sorry?

THE DEFENDANT:        Twelfth grade.

THE COURT:        The twelfth grade.  All right, sir.  You had - - this whole trial, I've been watching you.  You've been actively participating with Mr. Vause towards the defense of this case.  Mr. Vause, I'm sure, has explained to you that during the course of the trial, it's not a requirement for you to testify. You understand that, sir?

THE DEFENDANT:        Yes, I do.

THE COURT:          In fact, you made a decision in this case that you do not wish to testify, correct?

THE DEFENDANT:          Correct.

THE COURT:          Because you do know if you do take the witness stand, that's going to cause you to be subjected to cross-examination by Mr. Martin.  You understand that, sir?

THE DEFENDANT:          Yes, I do.

THE COURT:          He would have done his darnedest to try to discredit you in front of the jury?

THE DEFENDANT:          Yes.

THE COURT:          That includes going into any prior felony convictions which you may have in the state of Florida and any prior convictions involving dishonesty; do you understand that, sir?

THE DEFENDANT:          Yes.

THE COURT:          In light of all that and taking all that into account and looking at the advantages that sometimes a jury would like to hear your side of the story, you came to the conclusion after you spoke with your counsel that you did not wish to testify; is that correct, sir?

THE DEFENDANT:          That's correct.

THE COURT:          Now, with respect to that decision, has anyone forced you or threatened you in any way to make you reach that decision, sir?

THE DEFENDANT:          No.

THE COURT:          You're doing that freely and voluntarily based on your own accord; is that correct, sir?

THE DEFENDANT:        That's correct.

THE COURT:        You've had the benefit of counsel in making that determination?

THE DEFENDANT:        Yes.

THE COURT:        All right, sir. You may be seated. Let the record reflect that the Defendant's waiver of his right not to take the witness (stand) is, in fact, freely and voluntarily made.

(Pages 202, *et. seq.*, trial transcript).

The state court, in ruling on Kelley's 3.850 motion, determined that Kelley's waiver of his right to testify was done freely and voluntarily. This Court is bound by state court findings of fact unless the habeas petitioner is able to overcome the presumption of correctness by clear and convincing evidence. Kelley has failed to overcome this finding of fact.

Claim one also fails because Kelley fails to demonstrate prejudice. He has failed to establish a basis to conclude that there was a reasonable probability of a different outcome had he taken the stand and testified. Contrary to his assertion that his failure to testify constituted an abandonment of his self-defense theory, the jury actually heard his version of the events as he had described them to the police. He has not shown that his testimony in court would have been any different than his prior statement to the police.

For the reasons stated, claim one is without merit and is denied.

## Claim Two

His trial attorney was ineffective for failing to investigate, depose, and subpoena an eye witness to part of the incident who would have corroborated Kelley's theory of defense (i.e. self-defense).

In support of claim two, Kelley argues that his attorney was ineffective for failing to subpoena his neighbor, Shawn McCloud, who he says was an eye witness to the victim's verbal and threatening assault on him at 5:30 a.m.  He contends that Mr. McCloud would have testified that the victim was actually the aggressor.

Kelley has not shown that his attorney's performance was deficient in not deposing or calling McCloud as a witness.  At the state court evidentiary hearing, Kelley conceded that McCloud only witnessed the first part of the incident (the alleged victim's knocking on Kelley's door and yelling at 5:30 a.m.) and did not witness the latter part of the incident in which Defendant actually struck the victim.  The state court said:

> The incident began with the victim, along with another man, knocking and banging on Defendant's trailer, at 5:30 a.m., to wake him up and retrieve a bicycle and money.  In response, Defendant yelled at the men not to wake him up.  Eventually, Defendant emerged from the trailer and, at some point, armed himself with a pipe and chased the men away from his trailer.  These are the events that McCloud would have witnessed and he did not witness the events that occurred once the men ran around the trailer or the actual striking of the victim with the pipe.

(State court order denying claim two in Rule 3.850 proceeding, order filed July 27, 2001).

Since McCloud did not witness the circumstances surrounding the actual striking of the victim with the pipe, he was not an essential witness to a self-defense theory and trial counsel was not deficient in not deposing him or calling him as a witness.

Kelley has also failed to show prejudice.  The state court held that McCloud's testimony would not support Defendant's self-defense theory such that it would have reasonably produced a different trial outcome.  This Court agrees.  Having failed to meet the Strickland test, this Court determines that claim two is without merit and is denied.

## Claim Three

His trial attorney was ineffective by not producing perjured sworn statements of victims stating why they came to Kelley's home.

In support of claim three, Kelley argues that the alleged victims signed a sworn statement (presumably taken by the police) stating they came to Kelley's residence to retrieve a borrowed bicycle at 5:30 a.m. in the morning.  Kelley states that the victims earlier told the officer they had already retrieved the bicycle.  He contends that, if the sworn statements had been shown to the jury, it would have bolstered his theory of self-defense by causing the jurors to question why the victims ever went to his home in the first place.

First, statements written down by a police officer for the purpose of a report cannot be shown to the jury.  They can be used to refresh the officer's memory in the event it is necessary to have the officer testify about what was said if the witness in question denies having made the statement.  Even so, to not show the jury these statements is proper procedure on the part of an attorney, not deficient performance.

Second, Kelley cannot show prejudice because his trial attorney did impeach Mr. Neilson on cross-examination.  Mr. Neilson did not deny that he had told Officer Kenda, the investigating officer, that he had gotten his bicycle back earlier that evening before he went

to see Mr. Kelley at 5:30 a.m. in the morning.  (See page 121 of trial transcript).

Since Kelley fails to meet the requirements of Strickland in his third claim, that claim

is denied.

## Claim Four

His trial attorney was ineffective for "forgetting defense," i.e., showing why
a witness would be biased towards Kelley because Kelley lived with his
daughter against family wishes.

In support of claim four, Kelley argues his trial counsel was ineffective because he

failed to show a witness, Royce Vick, was biased towards Kelley because Kelley had lived

with Vick's daughter against family wishes.  Kelley acknowledges that the attorney began

this line of questioning, but contends that, after a side bar conversation with the Court, he

abandoned the whole line of questioning.

It is difficult to say whether trial counsel's failure to follow up on a line of questioning

about an argument that may or may not have taken place between Royce Vick and Kelley

was deficient without knowing what the witness would have said.  The witness was

questioned about Vick having gone to Mr. Kelley and Ms. Bennett's home looking for his

daughter and the witness acknowledged that he had done so approximately six months ago.

What we do not know is what Vick would have said about whether in fact there was an

argument between the two and whether the argument had anything to do with Vick's

daughter.  Kelley does not claim he was living with Vick's daughter in a romantic

relationship, he claims he was living on a temporary basis in the same house with Vick's

daughter and her boyfriend.  Had Vick denied that there was an argument or that he was

biased against Kelley, there was nothing more that the trial attorney could have done at that time with Mr. Vick.  It would have been necessary to call another witness to impeach Vick on that point (assuming the court would have even allowed such collateral impeachment) and Kelley has pointed to no witness who was ready and willing to give such contrary testimony.

What is easier to address is the prejudice prong.  Kelley has not shown that the result of the trial would have been any different had his trial counsel pursued the line of questioning about whether Vick had had a previous argument with Kelley.  Trial counsel had already gotten Vick to acknowledge that he had gone to the residence where Kelley was because his daughter also lived there.  And trial counsel had already successfully established that Vick was friends with Neilson and was with Neilson on the night in question.  In fact, the entire incident was Kelley against Neilson and Vick.  It was already clear to the jury whose side Vick would favor in the incident.

Having failed on the prejudice prong under the <u>Strickland</u> test, Kelley's fourth claim fails.

## **Claim Five**

His trial attorney was ineffective for failing to object to the deletion of a jury instruction on victim reputation evidence.

In support of this claim, Kelley argues that the victim hired three men to beat him up upon release from jail on bond.  He contends this was a crucial instruction and he would not have been found guilty had it been given.

Page 22 of  29

First, Kelley is procedurally barred from raising this claim since it was not part of his direct appeal. Second, the instruction was not given because of the trial court's ruling that the instruction was not appropriate. The trial court ruled that there had been no evidence presented during the trial about the victim's reputation. Reputation evidence is what others in the community thought about the victim. The ruling was correct on the part of the trial court judge and even had it not been, an incorrect ruling by a judge is not deficient performance on the part of trial counsel.

Therefore, claim five has no merit and will be denied.

## Claim Six

Trial attorney was ineffective for not providing an adequate defense because "he couldn't even choose a correct jury instruction."

In support of claim six, Kelley argues that trial counsel was apparently confused and could not choose a correct jury instruction. Kelley contends this means counsel was unprepared. This argument appears to be the one raised as ground seven in Kelley's Rule 3.850 motion. His trial counsel originally chose to have the court instruct the jury on the justifiable use of non-deadly force. After closing arguments were finished, Kelley's counsel requested the jury instruction on justifiable use of deadly force be read to the jury. The trial court granted that request and, prior to reading the instruction to the jury, allowed each side an additional ten minutes of closing argument on that instruction. (See page 262 of trial transcript).

Kelley's argument fails to satisfy either prong of the <u>Strickland</u> test.  Since counsel requested both instructions and both were given, his performance was not deficient.  Since the instruction was given and argued in closing arguments, there was no prejudice to Kelley. Therefore, claim six is without merit and is denied.

## **Claim Seven**

The trial court erred by forbidding Kelley's trial attorney from making an objection "leaving record unperfected for appellate review."

In support of claim seven, Kelley argues that the state trial court judge committed error when she foreclosed his lawyer from preserving for appellate review the state's comments regarding the jury instructions.

This claim fails for several reasons.  First, Kelley has not shown that counsel's objection was not preserved for appeal.  Just because the court stops an objection does not mean that the issue is not preserved.  Counsel's objection had been previously made and considered by the court during a bench conference.  Second, errors of a trial court are to be resolved on direct appeal in the state court system.  A federal court has no supervisory authority over state court proceedings.  A federal court is only concerned with errors that rise to the level of constitutional dimension.  <u>Smith v. Phillips</u>, 455 U.S. 209 (1982).  Third, this claim is procedurally barred because Kelley did not claim this alleged error as a matter of federal constitutional dimension during his state court appeal.  Claim seven therefore must be denied.

### **Claim Eight**

His trial attorney was ineffective for failing to object to prosecutor's erroneous closing statement on why victims went to Defendant's residence after testimony revealed victims' reasons were untrue."

In support of claim eight, Kelley argues that trial counsel was ineffective for failing to object to the prosecutor's comment upon the evidence concerning the reason why the victim went to Kelley's house at 5:30 a.m. in the morning. The victim stated that the reason he went to Kelley's house was to retrieve a bicycle. Kelley insists this testimony was shown to be false yet the prosecutor was allowed to make statements during his closing arguments as if the victim's version of the facts were true.

Kelley does not dispute that the prosecutor's comments were based upon the victim's version of the events given at trial. He merely argues the victim's version was false. An attorney for either side is free to comment upon the evidence from the witness stand and it is up to the jury to decide the truth or falsity of the evidence. If the jury decides the evidence was false, then obviously any argument based on that version of the evidence would be disregarded by them.

Since the prosecutor's comments were fair comment on the evidence, a failure to object is not deficient performance. Further, Kelley has not shown any prejudice from the failure to object. In light of the state's evidence concerning Kelley's use of a metal pipe in striking the victim, it cannot be said that there was any actual prejudice resulting from trial counsel's failure to object to the prosecutor's comments about why the victim knocked on Kelley's door at 5:30 a.m. in the morning.

Therefore, claim eight does not meet either prong of the <u>Strickland</u> test.  It is without merit and will therefore be denied.

### Claim Nine

> Both trial and appellate counsel were ineffective "by not producing witnesses and court camera footage video showing sleeping juror, evidencing fact that Defendant was convicted by five member jury against constitutional protections."

In support of claim nine, Kelley argues that a juror was sleeping during the trial and that trial counsel's statements, outside the presence of Defendant, that Defendant authorized him to waive this issue was untrue.  He faults his trial counsel for not providing any witnesses or court camera video coverage to substantiate that the juror actually slept during the trial.

Since this is a claim of ineffective assistance of counsel, the burden of proof is on Kelley to substantiate the facts supporting his claim.  Kelley was given that opportunity on May 31, 2002, when the state court held a hearing on his 3.850 motion concerning this particular claim.  Kelley was represented by assistant public defender Ms. Sorada Justiniano. After hearing from several witnesses, including the juror in question, the court made a finding of fact that the juror was not sleeping during the trial.  The judge announced on the record at the end of the hearing his reasons for the finding and it is amply supported by the record.  (See page 65 of the transcript of the May 31, 2002, hearing, page 327 of the record before this court).

This court is bound to accept the factual findings of the state court unless Kelley proves by clear and convincing evidence that it was not based on a reasonable determination from the evidence.  Kelley has not met that burden, and claim nine fails for lack of merit.

### Claim Ten

Trial attorney was ineffective by allowing prosecutor "to continuously comment on Defendant's right to remain silent."

In support of claim ten, Kelley argues that his lawyer should have objected to certain of the prosecutor's comments made during closing argument that reflected upon Kelley's election not to testify.  Further, he contends that these comments, "though veiled," produced a question in the jurors' minds that he must have something to hide if he did not testify in his own defense.

Notably, Kelley does not point to any specific words or comments, veiled or otherwise, that the prosecutor actually said so that this court may weigh their potential effect on the trial.  Claim ten appears to be a general catch-all claim with no specific detail.  He took issue with five comments in his Rule 3.850 motion in state court.  One such comment was that the prosecutor told the jury that they had heard "from two witnesses" and "there is nothing from the witness stand, other than the testimony of Mr. Neilson and Mr. Vick."

First, the issue of whether these comments are appropriate under state law are for state courts to determine.  This court can only view this claim in the light of whether the comments rise to the level of a constitutional dimension such that they deprived Kelley of his right to due process.  In his claims in state court, Kelley did not present this issue as rising to the

level of depriving him of his federal constitutional rights.  He is therefore procedurally barred from making that contention here.

Second, even if he were not procedurally barred from proceeding here, this Court agrees with the state court that the statements do not present such egregious conduct as to deny Defendant a fair trial.  Most reasonable lawyers would not have objected to such comments and therefore trial counsel was not ineffective for not objecting.  Further, Kelley has pointed to no prejudice to show that the outcome of the trial would have likely been different had these "veiled" comments not been made by the prosecutor.

Therefore, claim ten is without merit and therefore denied.

## **Claim Eleven**

The cumulative errors made by his trial attorney, the prosecutor, and the trial court judge caused the Defendant to be convicted.

In support of claim eleven, Kelley contends that his previous ten claims have shown instances of error committed by trial counsel, mistakes made by the prosecutor, and errors made by the trial court.

Kelley does not claim, nor did he claim in state court, that these various unspecified errors and omissions rise to the level of a federal constitutional dimension.  His claim is procedurally barred for that reason.  Additionally, his claim is without merit for the reasons previously given in this Order as to each of his ten claims.  If the ten claims are insufficient individually, they do not become sufficient merely because he raises them cumulatively.

Since claim eleven is without merit, it will be denied.

## <u>CONCLUSION</u>

Having addressed each claim individually and having determined each to be without

merit, the Petition for Writ of Habeas Corpus (Dkt. #1) is DENIED.  The Clerk is directed

to enter judgment in favor of Respondent and against Petitioner, to terminate any pending

motions, and to CLOSE this file.

**DONE** and **ORDERED** in Tampa, Florida on February 13, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record

F:\Docs\2003\03-cv-2071.kelley order.wpd